MARK M. HATHAWAY
(CA 151332; DC 437335; IL 6327924; NY 2431682)
JENNA E. PARKER (CA 303560)
HATHAWAY PARKER
445 S. Figueroa Street, 31st Floor
Los Angeles, California 90071
Telephone: (213) 529-9000
Facsimile: (213) 529-0783
E-Mail: mark@hathawayparker.com
E-Mail: jenna@hathawayparker.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYCE DIXON, an individual,<br><br>  Plaintiff,<br><br>v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, a California corporation; and DOES 1 – 50, inclusive,<br><br>  Defendants. | Case No.: 2:21-cv-05286-VAP-AFM<br><br>**PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS IN PART PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Date:  January 31, 2022<br>Time:  2:00 p.m.<br>Court:  8A<br>Judge:  Hon. Virginia A. Phillips<br><br>Complaint Filed: June 29, 2021<br>FAC Filed:  Nov. 15, 2021<br>Trial Date:  None Set |

PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN
CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS IN PART

1

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................5

II. ARGUMENT .......................................................................................................7

    1. *Dixon alleges promises by USC that are definite enough to establish contractual obligations or promissory estoppel.* .........................................................................................7

    2. *Given that USC's promises were definite enough to be actionable, Dixon has alleged facts establishing that USC has breached these obligations.* ............................................. 10

    3. *Dixon has alleged sufficient facts showing that he relied on USC's purported promises to enroll at USC to his detriment.* ..................................................................................... 11

III. LEAVE TO AMEND ........................................................................................13

IV. CONCLUSION .................................................................................................13

PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS IN PART

2

## TABLE OF AUTHORITIES

### Federal Cases

*Ashcroft v. Iqbal* (2009)
   556 U.S. 662 ..................................................................................................11

*Comm. of Cent. Am. Refugees v. INS*,
   795 F.2d 1434 (9th Cir. 1986) .........................................................................8

*Doe v. Cal. Inst. of Tech.*
   (C.D.Cal. Aug. 13, 2019, No. 2:19-cv-01005-AB (KSx)) 2019
   U.S.Dist.LEXIS 230684, 2019 WL 8645652 ................................................9

*Doe v. Columbia Coll. Chi.*,
   299 F. Supp. 3d 939 (N.D.Ill. 2017) ..............................................................10

*Doe v. Columbia Coll. Chi.*,
   No. 17-CV-00748, 2018 U.S. Dist. LEXIS 9243 (N.D. Ill. Jan. 22, 2018) ...............10

*Doe v. Univ. of Chi.*
   (N.D.Ill. Sep. 20, 2017, No. 16 C 08298) 2017 U.S.Dist.LEXIS 153355,
   2017 WL 4163960 ......................................................................................9, 10

*Erickson v. Pardus* (2007)
   551 U.S. 89 ......................................................................................................6

*Leadsinger, Inc. v. BMG Music Publ'g*,
   512 F.3d 522 (9th Cir. 2008) .........................................................................13

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000)(en banc) .......................................................13

*M/V American Queen v. San Diego Marine Constr. Corp.* (9th Cir. 1983)
   708 F.2d 1483 ..................................................................................................8

### California Cases

*Berman v. Regents of University of California*,
   229 Cal.App.4th 1265 (2014) ..........................................................................8

*Doe v. Allee*,
   30 Cal.App.1036 (Cal. App. 2019) .......................................................6, 8, 12

*Doe v. Allee*,
    30 Cal.App.5th 1036 (2019) ..................................................................................10

*Seaman's Direct Buying Service, Inc. v. Standard Oil Co.*,
    36 Cal.3d 752 (1984) ..............................................................................................7

*Zumbrun v. University of Southern California.*
    25 Cal.App.3d 1 (1972) ..........................................................................................7

### California Statutes

Cal. Civ. Code
    §§ 1635-1663 .........................................................................................................8
    § 1654.....................................................................................................................8

Cal. Code Civ. Proc.
    § 1094.5..............................................................................................................7, 8

PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS IN PART

4

## I. INTRODUCTION

Plaintiff BRYCE DIXON is a victim of Defendant UNIVERSITY OF SOUTHERN CALIFORNIA's (hereinafter "USC" or "University") flawed and, in many regards, unlawful, private Title IX adjudication system wherein USC improperly and unlawfully determined that Mr. Dixon had violated, i.e. breached, USC's Student Code of Conduct and terminated its agreement with Mr. Dixon that he would attend USC on a full-football scholarship for four years and earn his undergraduate degree, possibly extending to a fifth year so he could earn his master's degree.[1]

USC moves again to dismiss Mr. Dixon's claim that USC breached their contract for Mr. Dixon to attend USC on full-scholarship and that USC breached the USC-drafted Student Code of Conduct that articulates the rights and obligations of USC students on one hand and the University on the other.

In seeking dismissal of Mr. Dixon's claims, USC asserts that, while Mr. Dixon and all the other 49,500 USC students[2] are bound by the specific terms of the USC-drafted Student Code of Conduct, the University of Southern California, a preeminent university with a 120-year old law school and doctorate programs in English, is not bound by the specific terms of the Student Code of Conduct because the words that USC used to describe its own obligations and guarantees to students in the Student Code of Conduct are too ill-defined and vague to be enforceable under contract and estoppel principles. USC demands that USC students "make themselves aware of and abide by the university community's standards of behavior as articulated in the Student Conduct Code and in related policy statements" (USC Student Code §10.00) but argues that USC need not abide by its own promises "as articulated in the Student Conduct Code and in related policy statements." (Am. Compl. ¶ 66.)

---

[1] Black Lives Matter (usctrojans.com)
[2] https://about.usc.edu/facts/

USC's hypocrisy and double-standard is glaring and is utterly at odds with the profound and glorious proclamations in USC's 2014-2015 Scampus and the USC Code of Ethics:

> At the University of Southern California, ethical behavior is predicated on two main pillars: a commitment to discharging our obligations to others in a fair and honest manner, and a commitment to respecting the rights and dignity of all persons.
>
> When we make promises as an institution, or as individuals who are authorized to speak on behalf of USC, we keep those promises, including especially the promises expressed and implied in our Role and Mission Statement. We try to do what is right even if no one is watching us or compelling us to do the right thing.

USC promised to treat Mr. Dixon fairly if he attended USC and played Trojan football and USC broke their promise to Mr. Dixon repeatedly. See, *Doe v. Allee*, 30 Cal.App.1036, 1054 (Cal. App. 2019). Now USC wants to avoid being accountable to Mr. Dixon by claiming the specific promises USC made to him were not unambiguous, that USC had its fingers crossed behind its back when making promises to Mr. Dixon.

USC may ultimately prevail on summary judgment or at trial, but Mr. Dixon should be permitted to pursue his breach of contract and promissory estoppel claims at this pleading stage of the litigation.

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929, 940, 2007 U.S. LEXIS 5901, *21 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).
>
> *Erickson v. Pardus* (2007) 551 U.S. 89, 93.

## II. ARGUMENT

Plaintiff addresses the three points in USC's memorandum[3] as follows:

### 1. *Dixon alleges promises by USC that are definite enough to establish contractual obligations or promissory estoppel.*

USC appears to accept that USC's relationship with Mr. Dixon is contractual, the basic terms being that Mr. Dixon agreed to use his athletic talents and play for USC Trojan football[4] and USC agreed to extend a full-scholarship for Mr. Dixon to attend USC to earn his undergraduate degree. FAC ¶ 286, *Zumbrun v. University of Southern California*. 25 Cal.App.3d 1, 10 (1972).

The crux of USC's argument now is that the specific terms that USC used to make its own promises to students, -- that USC guaranteed students a "fair, thorough, neutral, or impartial investigation" (Am. Com. ¶ 69) – are not definite enough to establish contractual obligations or promissory estoppel. (USC Memorandum, p. 5)

This argument is specious on at least the following three grounds:

> (1) California law implies in *every* contract a covenant of good faith and fair dealing (*Seaman's Direct Buying Service, Inc. v. Standard Oil Co.,* 36 Cal.3d 752, 768 (1984); Am. Compl. ¶ 296. A contract of adhesion that is used by a university as a sword and shield against its own students violates any reasonable concept of good faith and fair dealing.

> (2) fairness and impartiality in university discipline procedures is required by California law and subject to judicial review under Cal. Code Civ. Proc. § 1094.5. Decisions by administrative agencies, including disciplinary decisions by private and public universities, are routinely subject to judicial review for fairness

---

[3] The factual background is set forth in the Amended Complaint at ¶¶ 21 to 223.

[4] USC Trojan football generates $50 Million and clears $18 Million a year for USC. See, https://www.collegefactual.com/colleges/university-of-southern-california/student-life/sports/#football
PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS IN PART

7

under Calif. Code Civ. Proc., § 1094.5 and often found to be unfair, as occurred in in Mr. Dixon's case. *Doe v. Allee*, 30 Cal.App.1036, 1054 (2019).

(3) USC is bound by law to comply with its own policies and procedures, including the USC-drafted Student Code of Conduct. *Berman v. Regents of University of California,* 229 Cal.App.4th 1265, 1271-72 (2014). What an absurd result where a University must keep its promises to students as a matter of California law, but those same University promises are not unambiguous enough to be enforced by students under contract and promissory estoppel principles.

Fairness and impartiality are not vague terms devoid of sufficient definition or legal purpose to be enforceable under contract and promissory estoppel principles. The specific terms of the USC-drafted Student Code of Conduct, which USC is bound by California law to follow, may be interpreted under Cal. Civ. Code, §§ 1635-1663. Any ambiguity in USC's promises, should go against USC, which made the promises.

> In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.

Cal. Civ. Code, § 1654.

USC cites three trial court orders[5] in support of its claim that the words USC used to convey the University's promise to student are too vague or indefinite for Mr. Dixon to enforce in his contract and promissory estoppel causes.

---

[5] Unpublished orders have no precedential value. See *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1438 n.5 (9th Cir. 1986), citing former Ninth Circuit Rule 21(c). "As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it. [Citations] But a court can properly notice a doctrine or rule of law from such prior case and apply that principle under the theory of stare decisis. [Citations]." *M/V American Queen v. San Diego Marine Constr. Corp.* (9th

PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS IN PART

8

The first order is from Hon. André Birotte Jr. in the Central District of California regarding allegations of the general timing and conduct of Title IX investigations, such as "within a reasonably prompt time frame," "as soon as practicable," and to "not ask questions or seek evidence of complainant's prior sexual conduct with anyone other than the respondent," to not "retaliate" against students "for making a good-faith report of sexual violence"; and to "not tolerate intentional false reporting of incidents." The closest language analogous to Mr. Dixon's situation at USC are Jane Doe's allegations that Cal Tech failed to use investigators who were "impartial" and were "trained regularly in issues related to sexual misconduct." *Doe v. Cal. Inst. of Tech.* (C.D.Cal. Aug. 13, 2019, No. 2:19-cv-01005-AB (KSx)) 2019 U.S.Dist.LEXIS 230684, at \*14, 2019 WL 8645652, at \*5.) Whether Cal Tech's failure to be "impartial" is a breach of contract was not heard on the merits and Judge Birotte's order dismissing Jane Doe's breach of contract claim in her *Second Amended* Complaint was issued with leave to amend. Id.

The second trial court order is from the Northern District of Illinois, Eastern Division and concerns not breach of contract, but promissory estoppel under Illinois law. Hon. Edmond E. Chang did find, under the facts of that case, that the University of Chicago's promise to adjudicate complaints in a fair and impartial manner, the promises to provide in all cases of alleged sexual misconduct "a prompt, fair, impartial and thorough investigation and resolution that is consistent with the University's policies and is transparent to the complainant and the respondent," and the University's promise to implement its policies in a manner "consistent with federal, state, and local regulations governing non-discrimination and unlawful harassment including ... Title IX" were definite enough to constitute an *unambiguous* promise. *Doe v. Univ. of Chi.* (N.D.Ill. Sep. 20, 2017, No. 16 C 08298) 2017 U.S.Dist.LEXIS 153355, at \*28-29, 2017 WL 4163960, at \*10. Judge Chang noted that "John Doe correctly points out that promises sufficient to support a claim of promissory estoppel may come from a defendant's

---

Cir. 1983) 708 F.2d 1483, 1491.)

PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS IN PART

9

1  policies and procedures manual." *Doe v. Univ. of Chi.* (N.D.Ill. Sep. 20, 2017, No. 16 C
2  08298) 2017 U.S.Dist.LEXIS 153355, at *30.  Judge Chang concluded that John Doe's
3  claims fell short of alleging a valid claim for promissory estoppel.

4       USC also cites a third trial court order from the Northern District of Illinois,
5  Eastern Division that also addressed promissory estoppel under Illinois law.  Referring to
6  *Doe v. Univ. of Chi.* case and Judge Chang's order, Hon. Amy J. St. Eve granted
7  Columbia College Chicago motion to dismiss, but without prejudice.  *Doe v. Columbia*
8  *Coll. Chi.,* 299 F. Supp. 3d 939, 956 (N.D.Ill. 2017).  Doe apparently filed an amended
9  complaint, adding a breach of contract cause.  The trial court ultimately granted
10 Columbia College Chicago's motion to dismiss, specifically the breach of contract claim
11 on the grounds that Doe failed to allege that the college's actions or decisions were
12 arbitrary or capricious, as required under Illinois law.  *Doe v. Columbia Coll. Chi.* , No.
13 17-CV-00748, 2018 U.S. Dist. LEXIS 9243 (N.D. Ill. Jan. 22, 2018)

### 2. *Given that USC's promises were definite enough to be actionable, Dixon has alleged facts establishing that USC has breached these obligations.*

     Mr. Dixon alleges facts showing that USC breached its obligations under the USC-drafted Student Code of Conduct and failed to provide a fair hearing.  Am. Compl. ¶ 294, 297, 299, 300, 304, 306, 307, 308, 309, 310, 311, 313, 315.  USC's breach of the fairness issue and compliance with the law and its own policies issues are established by the order of the California Court of Appeal, Second District, Division Four.  *Doe v. Allee*, 30 Cal.App.5th 1036, 1071 (2019).

     USC improperly terminated its contract for Mr. Dixon to attend USC on a full four-year football scholarship and even after a stay order was issued by the trial court, USC banned Mr. Dixon from the football team and denied him access to the athletic training, meals programs, tutoring, and other benefits of his football scholarship that had helped him to succeed and had also provided structure.  Am. Compl. ¶ 220.

### 3. *Dixon has alleged sufficient facts showing that he relied on USC's purported promises to enroll at USC to his detriment.*

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929.
>
> *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678.

Accepting the specific facts set forth in the Amended Complaint, the Court can draw the reasonable inference that USC made promises to Mr. Dixon upon which he reasonably relied to enroll at USC and that USC violated those promises. On page seven of its Memorandum, USC notes that Mr. Dixon amended his Complaint to allege that the National Collegiate Athletic Association ("NCAA") National Letter of Intent, USC enrollment agreement, and "contracts related to financial aid and tuition," create contractual obligations that USC breached. Amended Complaint ¶ 286. As USC and the Court are no doubt aware, Mr. Dixon has been generally unavailable due to his current incarceration[6] and has no access to any of the documents related to his application and matriculation to USC.

On October 29, 2021, Mr. Dixon requested a document production from Defendant USC to obtain his application file, the NCAA National Letter(s) of Intent, any Athletics Financial Aid Agreements, and the enrollment agreement for Bryce Dixon to attend USC. The documents were not available by November 15, 2021 when Mr. Dixon was required to file his Amended Complaint.

On January 3, 2022, however, USC produced 450 pages of records, which included

---

[6] Amended Complaint at ¶¶ 217 to 222.

117 pages of new documents that were not part of the record before the Court of Appeal in *Doe v. Allee*. These newly-produced USC documents show that when he was a student at Saint Bonaventure High School in Ventura, California,[7] Bryce Dixon played four seasons of an extremely demanding (30 hours per week) varsity football program and played four years of varsity basketball and was motivated, bright, hard-working, and resilient according to his guidance counselor Mrs. Natalie D. Lajoie. When he was a junior, Mr. Dixon was selected as football team captain and was being recruited by a number of universities to play football after he graduated from high school, including University of Arizona, Boston College, University of Oregon, Northwestern University, Ohio State University, University Of Mississippi, University of Washington, Vanderbilt University, University of Kentucky, Boise State University, University of Florida, University of California (Berkeley), Purdue University, and USC.

     USC records show that on January 27, 2014, USC Athletic Director Pat Hayden and USC Dean of Financial Aid made a written offer to Mr. Dixon that if he were to enroll at USC and play football that Mr. Dixon would receive a full scholarship for the upcoming 2014-2015 year and up to a total of five academic years. The written agreement, signed by USC officials, was approved in accordance with applicable USC, PAC-12 and NCAA regulations, and provided that Mr. Dixon's scholarship could not be reduced or canceled on the basis of Mr. Dixon's athletics ability, his performance or contribution to USC Trojan football success, or because of an injury or illness that prevented Mr. Dixon from participating in athletics, or for any other athletics reason. The offer was conditioned upon Mr. Dixon fulfilling the admission requirements and being admitted to USC, meeting and maintaining eligibility requirements for athletics participation and financial aid established by the NCAA, the Pac-12 Conference and USC, and meeting any NCAA transfer-eligibility requirements. Any reduction or

---

[7] https://sbhsvta.org/

PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS IN PART

12

cancellation of aid could only be taken for proper cause and after Mr. Dixon had had an opportunity for a hearing.

The USC documents show that after receiving USC Athletic Director Pat Hayden's offer, Mr. Dixon signed a National Letter of Intent on February 5, 2014 to certify his decision to enroll at USC, forgoing other opportunities at other universities. On September 10, 2014, USC and Mr. Dixon signed a multi-year agreement for a full four-year athletics grant-in-aid, a financial package valued at some $246,000 for four years, with a fifth year possible for a total of over $300,000. Plaintiff should have the opportunity to amend to specify the parties' obligations under these newly-disclosed agreements and identify the provisions of the agreements that USC purportedly breached.

## III. LEAVE TO AMEND

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires." (Fed. R. Civ. P. 15(a).) The purpose of this Rule is to ensure that decisions are made "on the merits rather than on the pleadings or technicalities." (*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)(en banc).) Leave to amend should only be denied if it would unduly prejudice the other party, be futile, or if the party so requesting is acting in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

Since none of those exceptions apply here, should the Court find that USC's promises in its Student Code of Conduct lack sufficient specificity to enforce in contract and promissory estoppel claims, Plaintiff requests the opportunity to amend.

## IV. CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied in its entirety or that leave to amend be granted to Plaintiff.

|     |     |     |     |
| --- | --- | --- | --- |
| 1   |     |     |     |

                                        HATHAWAY PARKER

DATED: January 10, 2022    By:    \_\_/S/ Mark Hathaway_____
                                                            Mark M. Hathaway
                                                            Jenna E. Parker
                                                            Attorneys for Plaintiff

PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS IN PART

14