1  CAMERON W. FOX (SB# 218116)
2  cameronfox@paulhastings.com
   JESSICA E. MENDELSON (SB# 280388)
3  jessicamendelson@paulhastings.com
   AUSTIN M. SCHULZ (SB# 323067)
4  austinschulz@paulhastings.com
   PAUL HASTINGS LLP
5  515 South Flower Street, Twenty-Fifth Floor
   Los Angeles, California 90071-2228
6  Telephone: (213) 683-6000
7  Facsimile: (213) 627-0705

8  Attorneys for Defendant
   UNIVERSITY OF SOUTHERN CALIFORNIA
9

10           UNITED STATES DISTRICT COURT

11           CENTRAL DISTRICT OF CALIFORNIA

12

13 | BRYCE DIXON, an individual, | CASE NO. 2:21-cv-05286-VAP (AFMx)
   | Plaintiff, | **DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
   | vs. |
   | UNIVERSITY OF SOUTHERN CALIFORNIA, a California corporation; and DOES 1-50, inclusive, | *[Filed concurrently with Defendant USC's Responses to Plaintiff's Statement of Genuine Issues; Supplemental Request For Judicial Notice; and [Proposed] Order]*
   | Defendants. |
   | | Date:    January 9, 2023
   | | Time:    2:00 p.m.
   | | Dept.:   8A
   | | Judge:   Hon. Virginia A. Phillips
   | | Complaint Filed:  June 29, 2021
   | | FAC Filed:        November 15, 2021
   | | Trial Date:       November 15, 2023

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ..........................................................................................5

II. IT IS DIXON'S BURDEN TO ESTABLISH THAT HE IS ENTITLED TO EQUITABLE TOLLING (THAT ALL THREE ELEMENTS ARE SATISFIED)..................................................................7

III. DIXON'S OPPOSITION LARGELY ADVANCES ARGUMENTS THAT USC'S MOVING PAPERS ALREADY DISPROVED OR THAT THE COURT ALREADY REJECTED ..............................................7

IV. DIXON'S NEW ARGUMENTS FARE NO BETTER ..................................9

    A. Dixon's New "Notice" Theory (Based On A Comment About Future Litigation In A 2020 Fees Hearing) Shows The Opposite – Dixon's Counsel Was Dismissive Of The Notion That He Would File A Complaint For Damages. .................................9

    B. Dixon's Contention That USC Should Treat All Student Discipline Cases As Heading To Litigation Is Unrealistic....................9

    C. Dixon's References To The Mandamus Action As An "*Administrative* Remedy" Are Misleading And Incorrect...................10

    D. Dixon's Claim Of Reasonableness Fails. ............................................11

    E. Dixon's Arguments About Prejudice Are Based On His Application Of The Wrong Legal Standard; USC Has Shown Real And Significant Prejudice.............................................................14

V. CONCLUSION ............................................................................................16

# **TABLE OF AUTHORITIES**

Page(s)
**CASES**

*Addison v. State of California*,
  21 Cal. 3d 313 (1978)................................................................................*passim*

*Appalachian Ins. Co. v. McDonnell Douglas Corp.*,
  214 Cal. App. 3d 1 (1989) ................................................................................ 13

*Audio Mktg. Servs., S.A.S. v. Monster Cable Prods., Inc.*,
  No. C 12-04760 WHA, 2013 WL 633202 (N.D. Cal. Feb. 20, 2013) ............ 7, 12

*Brome v. California Highway Patrol*,
  44 Cal. App. 5th 786 (2020)......................................................................... 8, 13

*Campbell v. Graham-Armstrong*,
  9 Cal. 3d 482 (1973)......................................................................................... 13

*Cervantes v. City of San Diego*,
  5 F.3d 1273 (9th Cir. 1993) ............................................................................... 7

*Collier v. City of Pasadena*,
  142 Cal. App. 3d 917 (1983)......................................................................... 7, 13

*Darnaa, LLC v. Google, Inc.*,
  No. 15-CV-03221-RMW, 2016 WL 6540452
  (N.D. Cal. Nov. 2, 2016) ............................................................................. 7, 12

*Daviton v. Columbia/HCA Healthcare Corp.*,
  241 F.3d 1131 (9th Cir. 2001) ......................................................................... 15

*Donoghue v. Orange Cnty.*,
  848 F.2d 926 (9th Cir.1987) .............................................................................. 7

*Elkins v. Derby*,
  12 Cal. 3d 410 (1974).................................................................................. 8, 11

*Ervin v. Los Angeles Cnty.*,
  848 F.2d 1018 (9th Cir. 1988).......................................................................... 12

*In re Marriage of Zimmerman*,
  183 Cal. App. 4th 900 (2010).............................................................................. 7

*Johnson v. City of Loma Linda*,
   24 Cal. 4th 61 (2000) .................................................................................... 11

*Kolani v. Gluska*,
   64 Cal. App. 4th 402 (1998) ......................................................................... 12

*Lambert v. Uniregistry, Inc.*,
   No. 8:18-CV-01566-JLS-JDE, 2019 WL 8129090
   (C.D. Cal. Dec. 2, 2019) .......................................................................... 14, 16

*Lantzy v. Centex Homes*,
   31 Cal. 4th 363 (2003) .................................................................................. 13

*Lerner v. Los Angeles City Bd. of Educ.*,
   59 Cal. 2d 382 (1963) ................................................................................... 11

*McDonald v. Antelope Valley Cmty. Coll. Dist.*,
   45 Cal. 4th 88 (2008) ........................................................................ 8, 10, 11

*McMahon v. Albany Unified Sch. Dist.*,
   104 Cal. App. 4th 1275 (2002) ..................................................................... 12

*Meyers v. Asics Corp.*,
   974 F.2d 1304 (Fed. Cir. 1992) ..................................................................... 16

*Musaelian v. Sonoma Cnty. Sheriff's Dept.*,
   No. C 07-00806 SI, 2007 WL 1864342 (N.D. Cal. June 28, 2007) .............. 12

*Olson v. County of Sacramento*,
   38 Cal. App. 3d 958 (1974) .......................................................................... 11

*Tu-Vu Drive In Corp. v. Davies*,
   66 Cal. 2d 435 (1967) ................................................................................... 13

**STATUTES**

20 U.S.C. § 1681 (TITLE IX) ........................................................................ 6, 10, 15

CAL. CIV. PROC. CODE § 1094.5 ........................................................................... 8

**TREATISES**

CAL. PRAC. GUIDE CIV. PROC. BEFORE TR. STAT. OF LIMITATIONS,
   Ch. 6-A ............................................................................................................ 7

## I. INTRODUCTION

Dixon has failed to meet his burden to establish that equitable tolling—a doctrine applied *sparingly*—saves his claims.

As an initial matter, most of the arguments Dixon advances in his Opposition were addressed already in USC's moving papers (*e.g.*, Dixon relies on case law that USC already distinguished in its earlier submission), or were previously rejected by the Court (*e.g.*, Dixon claims he was unable to file this case until the mandamus action concluded, which this Court rejected in its October 20, 2021 ruling on USC's Motion to Dismiss).

Dixon's new arguments fail as well.

***First***, Dixon contends USC knew this case would be filed because, he claims, USC acknowledged (during a February 2020 hearing in the mandamus action) that a complaint for damages could follow. Yet Dixon fails to disclose in his papers that his counsel responded in that moment, and on the record, by denying that there was such a case: "There is no complaint for damages at this point. . . . **There's no case.** Any potential case is speculative." Plaintiff's RJN Ex. 11, 8:20-22 (emphasis added). That statement is particularly striking because, as of 2020, the facts were already five years old. That Dixon's counsel dismissed even a "potential case" as "speculative" at that stage is another example of how Dixon has failed to warn, and indeed misled, USC.[1]

***Second***, Dixon contends that it was unreasonable for USC not to assume this lawsuit was coming because USC and its counsel should treat every student discipline matter as likely to result in civil litigation. That is wildly unrealistic. USC's student population is nearly 50,000 students. Mendelson Decl., ¶ 12, Ex. I. That population regularly changes over – as students enroll, transfer, and graduate.

---

[1] *See also*, Dixon Depo. at 34:8-12 (Mendelson Decl. Ex. F) ("Q. Did you ever tell anyone at USC that you intended to sue for gender discrimination based on how you and witnesses were treated in the case? A. I don't believe I told anybody at USC I was going to sue.")

USC processes a large number of various types of student discipline cases, which include investigations and sanctions for myriad violations such as cheating, plagiarism, misuse of alcohol, and sexual misconduct. No university, especially one of USC's size, can be reasonably expected to treat every student discipline matter as if it will result in full-blown litigation with discovery and depositions.

*Third*, Dixon argues that, at a minimum, the nearly two years he let pass between the end of the mandamus action and his filing of this case is "reasonable." California state and federal law disagree. As described in Section IV.D below, courts consistently reject far shorter delays as unreasonable. Moreover, there is no question that Dixon has known all of the facts supporting his claims since 2015. Nothing prevented him from filing his discrimination claims back then and staying them, which would have preserved his claims and put the parties on notice. That is what Dixon's counsel has acknowledged he *must* do to preserve his other clients' discrimination claims (more on that below in Section IV.D).

*Fourth*, Dixon claims that he had to wait until his mandamus action concluded because it was an "administrative" remedy. That is wrong. Mandamus is a *judicial* remedy. The administrative remedy was the underlying process at USC (the investigation, decision, and appeal). That process finished in Spring 2015.

*Fifth*, Dixon argues that USC's showing of prejudice is insufficient given that the witnesses can simply refresh their memories by reviewing the administrative record. He is mistaken. The administrative record does not contain the most salient information that would be needed to assess what motivated Dr. Allee and other participants in the process to make the decisions they did.

For all of these reasons, and as described more fully below, USC requests that the Court grant summary judgment for USC.

## II. IT IS DIXON'S BURDEN TO ESTABLISH THAT HE IS ENTITLED TO EQUITABLE TOLLING (THAT ALL THREE ELEMENTS ARE SATISFIED)

Dixon concedes that the statute of limitations has lapsed on his claims, but asserts they are saved by equitable tolling. *See* Oppo. pp. 15-16.

Under California law, however, **equitable tolling is applied sparingly**—it extends the statute of limitations only "occasionally and in special situations." *Addison v. State of California*, 21 Cal. 3d 313, 316 (1978); Cal. Prac. Guide Civ. Proc. Before Tr. Stat. of Limitations, Ch. 6-A. Plaintiff "bears the burden of proving the applicability of equitable tolling." *In re Marriage of Zimmerman*, 183 Cal. App. 4th 900, 912 (2010). Plaintiff is responsible for establishing the following factors: "1) timely notice to the defendants in filing the first claim; 2) lack of prejudice to the defendants in gathering evidence for the second claim; and 3) good faith and reasonable conduct in filing the second claim." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (quoting *Donoghue v. Orange Cnty.*, 848 F.2d 926, 931 (9th Cir.1987); *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 924 (1983) (same).

A plaintiff seeking to apply equitable tolling must establish **all three factors**. Courts have repeatedly declined to apply equitable tolling where a plaintiff fails to establish one of the three factors. *Audio Mktg. Servs., S.A.S. v. Monster Cable Prods., Inc.,* No. C 12-04760 WHA, 2013 WL 633202, at *7-8 (N.D. Cal. Feb. 20, 2013) (declining to apply equitable tolling even though there was notice and no prejudice where plaintiff waited sixteen months to file its second litigation); *Darnaa, LLC v. Google, Inc.*, No. 15-CV-03221-RMW, 2016 WL 6540452, at *5-6 (N.D. Cal. Nov. 2, 2016) (declining to apply equitable tolling where there was notice and no prejudice but plaintiff waited ten months to file its second litigation).

## III. DIXON'S OPPOSITION LARGELY ADVANCES ARGUMENTS THAT USC'S MOVING PAPERS ALREADY DISPROVED OR THAT THE COURT ALREADY REJECTED

***First***, Dixon contends that USC has known *enough* about the case to

investigate it for purposes of this lawsuit because the mandamus action referenced the same underlying facts.  Oppo. p. 20.  Not so.  As USC explained in its moving papers, a mandamus action does not involve any investigation or civil discovery.  Motion, p. 14.  Causation and damages are not even at issue.  As a result, Dixon's mandamus petition gave notice only that he sought the kind of limited review that courts conduct under California Civil Procedure Code Section 1094.5.  Nothing more.[2]  *See* Motion, pp. 19-22.

***Second***, Dixon argues that *Elkins v. Derby*, 12 Cal. 3d 410 (1974)*, McDonald v. Antelope Valley Community College Dist.*, 45 Cal. 4th 88 (2008), and *Addison v. State of California*, 21 Cal. 3d 313 (1978), show that he is entitled to equitable tolling.  Oppo. pp. 16-18.  Again, not so.  As USC discussed in detail in its moving papers, the initial actions pursued in *Elkin*, *Addison*, and *McDonald* (as well as in *Brome*) involved complete investigations that included a need to examine and determine causation and damages.  The mandamus petition filed here is demonstrably different.  *See* Motion, pp. 17-20.

***Third***, Dixon argues he did not have the ability to file his lawsuit earlier because he was required to go through the entire mandamus process—not simply file his petition—before he could proceed with this case.  Oppo. pp. 11-14.  But the Court already rejected that theory in its ruling on USC's Motion to Dismiss in October 2021.  Dkt. 24 at p. 6:9-18 ("As in other similar cases, Dixon could have exhausted his judicial remedies by originally *filing* his Petition, and the claims in this action, in federal court because his claims had already accrued.") (emphasis in original).

---

[2] Dixon's related argument (that a half sentence in the "Jurisdiction and Venue" section of his lengthy mandamus petition should have put USC on notice of this case) fails similarly.  *See* Defendant's RJN Ex. 1 (Petition), ¶ 13.  A buried reference in a boilerplate document that counsel files regularly without ever bringing a later lawsuit does not provide actual notice.  *See* Motion, pp. 19-22.

## IV. DIXON'S NEW ARGUMENTS FARE NO BETTER

### A. Dixon's New "Notice" Theory (Based On A Comment About Future Litigation In A 2020 Fees Hearing) Shows The Opposite – Dixon's Counsel Was Dismissive Of The Notion That He Would File A Complaint For Damages.

In a February 2020 hearing to recover attorneys' fees in the mandamus action, Dixon's counsel took the position that he was entitled to recover fees there because "there was certainly no pecuniary benefit for [Dixon's] counsel, who undertook the litigation knowing that we would not be compensated." Plaintiff's RJN Ex. 11, 3:16-18. USC's counsel tested Dixon's assertion that his counsel knew he would never be compensated for representing Dixon, by pointing out that Dixon had not been limited to filing for mandamus review, and also had recourse through a civil litigation for damages.

In response, Dixon's counsel stated: "There is no complaint for damages at this point. . . . ***There's no case.*** Any potential case is speculative." Plaintiff's RJN Ex. 11, 8:18-22 (emphasis added). USC's counsel tested *that* statement, by pointing out that the bills Dixon's counsel had submitted (for the fee motion) referred to some work related to a complaint for damages. Again, Dixon's counsel shot it down, responding: "[L]ooking into *whether* a complaint should be filed has really no bearing. ***I don't think a two-hour entry means that a complaint for damages in this case is going to be filed.***" Plaintiff's RJN Ex. 11, 9:11-18 (emphasis added).

When Dixon's counsel made these statements, it was February 2020. The facts of this case were *already* five years old. If a case was to be filed, Dixon should have already known it by that point, and leveled with USC and the Court about it.

### B. Dixon's Contention That USC Should Treat All Student Discipline Cases As Heading To Litigation Is Unrealistic.

Dixon contends that USC and its counsel should treat every student

discipline matter as likely to result in civil litigation, which would have avoided any surprise here. That would be untenable given USC's student body of nearly 50,000 students, and the sheer number of discipline cases that the University handles. *See* Mendelson Decl., ¶ 12, Ex. I.

Relatedly, Dixon argues that USC should have been on notice of potential litigation based on the "other petitions for writs of mandamus against California colleges and universities brought by Dixon's counsel that USC is aware of," as well as the "832 court cases filed nationwide challenging the lack of fairness and due process in campus Title IX proceedings." *See* Oppo. p. 24 & fn.3. If that theory were adopted, it would lead to absurd results. All universities would be required to be on notice, and prepare for, potential litigation based merely on suits against *other universities* – it would effectively turn college and university Title IX offices into preemptive litigation shops, requiring them to constantly prepare for litigation in advance of filing based on what is happening at other schools. The law does not endorse that, nor should it. Indeed, California case law is clear that a case involving different parties does not provide sufficient notice for equitable tolling to apply. *McDonald,* 45 Cal. 4th at 102, n.2 (for equitable tolling to apply, generally the "[T]he filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim. Generally this means that the defendant in the first claim is the same one being sued in the second.") (citation omitted).

### C. Dixon's References To The Mandamus Action As An "*Administrative* Remedy" Are Misleading And Incorrect.

Dixon's use of the phrase "administrative remedy" throughout his Opposition is wrong. The mandamus action was not an administrative remedy at all. It was a ***court*** action, and therefore a ***judicial*** remedy.[3] The California Supreme Court made

---

[3] The *administrative* remedy Dixon needed to (and did) exhaust was USC's administrative process (which includes an internal investigation, internal adjudication, and internal appeal). That was a prerequisite to his mandamus action,

this clear in the case of *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 69-70 (2000)—distinguishing the "exhaustion of judicial remedies" requirement, from "exhaustion of administrative remedies," which requires that an administrative process has occurred before courts will have jurisdiction:

> This requirement of exhaustion of judicial remedies is to be distinguished from the requirement of exhaustion of administrative remedies. . . . Exhaustion of *administrative* remedies is "a jurisdictional prerequisite to resort to the courts." . . . Exhaustion of *judicial* remedies, on the other hand, is necessary to avoid giving binding "effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive *judicial* remedy for reviewing administrative action."

*Id*. at 70 (internal citations omitted, emphasis in original).[4]

The administrative remedy in this case was the administrative hearing process inside USC. That process was long over by the time he filed his petition for administrative mandamus to have his expulsion set aside. USC has never counted the time spent in the administrative process as part of Plaintiff's "delay", nor has this Court. *See also,* Dkt. 24 at 6 ("Dixon could have exhausted his judicial remedies by originally filing his Petition, and the claims in this action, in federal court.").

### D. Dixon's Claim Of Reasonableness Fails.

Dixon admits that his six-year delay in filing this case included waiting just under 2 years (21 months) from the trial court judgment to file this litigation.

---

and it was satisfied in 2015 when his appeal of his expulsion was denied by USC's appellate body. *See* Defendant's Request for Judicial Notice, Ex. 1, ¶ 47.
[4] It is for this same reason that all of Dixon's cited cases about equitable tolling fail. *See* Oppo. pp. 16-19, 27-28. Each of the cases involved situations where the statute of limitations was tolled to allow for administrative proceedings—not judicial proceedings. *Elkins,* 12 Cal. 3d at 417 (applying tolling during a pending Worker's Compensation claim); *McDonald,* 45 Cal. 4th at 96 (involving the voluntary exhaustion of community college internal grievance process, an administrative remedy); *Olson v. County of Sacramento*, 38 Cal. App. 3d 958 (1974) (applying equitable tolling during the pendency of administrative proceedings); *Lerner v. Los Angeles City Board*, 59 Cal. 2d 382 (1963) (involving the exhaustion of administrative city board proceedings).

Oppo. pp. 28-29. In his Opposition, he focuses his discussion of reasonableness on the sole question of whether it was reasonable for him to wait for the mandamus action to conclude (with a judgment entered). Oppo. pp. 27-28. But this Court already found (rightly) that waiting was unnecessary. *See* Dkt. 24 at p. 6:9-18. And his significant delay after the mandamus action inexcusably compounded the problem. No case of which USC is aware supports extending equitable tolling amid this much of a delay.

Courts have repeatedly declined to apply equitable tolling in situations with significantly shorter delays, particularly in cases where the plaintiff had known the facts supporting his or her claim for months or years, as is the case here. *Musaelian v. Sonoma Cnty. Sheriff's Dept.*, No. C 07-00806 SI, 2007 WL 1864342, at *3 (N.D. Cal. June 28, 2007) ("This Court is not aware of any authority which would allow equitable tolling here, where plaintiffs waited eight months to refile."); *Audio Mktg. Servs.*, 2013 WL 633202, at *7-8 (finding no "good faith and reasonable conduct" where sixteen months elapsed between last decision in first case and plaintiff's second filing); *Kolani v. Gluska*, 64 Cal. App. 4th 402, 410 (1998) (claims not saved by equitable tolling where plaintiffs "made no showing justifying the 78 day delay from dismissal of the federal suit to refiling in state court"); *Darnaa,* 2016 WL 6540452, at *6 (claims not saved by equitable tolling where plaintiff waited more than ten months from the prior suit's dismissal to file in federal court, and plaintiff knew of the factual bases for the claims for more than a year). *See Ervin v. Los Angeles Cnty.*, 848 F.2d 1018, 1020 (9th Cir. 1988) (declining to apply equitable tolling because plaintiff's conduct was "neither reasonable nor in good faith" where record revealed that she had been in possession of defendant's investigation file "for perhaps as much as a year and a half prior to her filing"); *McMahon v. Albany Unified Sch. Dist.,* 104 Cal. App. 4th 1275, 1293 (2002) (declining to apply equitable tolling even if plaintiff "mistakenly believed" that filing the state action was necessary for the federal action where plaintiff had

conducted his own investigation into the facts, and waited multiple years to file the federal suit).

Dixon contends that "reasonable and good faith conduct" does not require a plaintiff to "file simultaneous or even concurrent actions." Oppo. p. 27. In support of this, he cites *Addison v. State of California*, 21 Cal. 3d 313, 319 (1978).[5] Yet the court in *Addison*—in a holding consistent with the cases cited above—made clear that it applied equitable tolling because plaintiff filed his second claim a ***short time*** after tolling ended—not nearly two years later—as is the case here. *Id*; *Collier*, 142 Cal. App. 3d at 923 ("Perhaps, ***if a plaintiff delayed filing the second claim until the statute on that claim had nearly run, even after crediting the tolled period, his conduct might be considered unreasonable***.") (emphasis added).

Dixon also cites *Brome v. California Highway Patrol,* 44 Cal. App. 5th 786, 794 (2020) for the idea that he was reasonable. Yet the 11-month delay in *Brome* pales in comparison to Dixon's nearly two-year delay. Further, unlike in this case, the facts providing the basis for the lawsuit in *Brome* were fully investigated less than ten months prior to filing as part of a Worker's Compensation claim. By contrast, here, the events at issue happened nearly six years prior to the filing of this litigation, the investigation was limited to whether Dixon's conduct violated USC's policies (as opposed to whether USC engaged in tortious or discriminatory conduct towards Dixon), and the witnesses' memories have faded significantly. Unlike in *Brome*, allowing this litigation to proceed would be at odds with the fundamental purpose of the statute of limitations—"to prevent the assertion of stale claims by

---

[5] *Campbell v. Graham-Armstrong*, 9 Cal. 3d 482, 490 (1973), *Tu-Vu Drive In Corp. v. Davies*, 66 Cal. 2d 435, 437 (1967), and *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (2003) (Oppo. p. 16), which Dixon also cites, are inapposite—in the first two, the court declined to apply equitable tolling; in the third, the court does not even address it. *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 41-42 (1989) (Oppo. p. 16), where plaintiff filed the second lawsuit *one week* after dismissal of the first, is similarly inapplicable.

plaintiffs who have failed to file their action until evidence is no longer fresh and witnesses are no longer available." *Addison*, 21 Cal. 3d at 317.

Nothing prevented Dixon from filing this litigation in 2015 and staying the action, which would have preserved his claims and put the parties on notice. Dixon's counsel is well aware of that having taken that position in *Boermeester v. University of Southern California, et al.*, Case No. 2:19-CV-02137 R (MRWx) (C.D. Cal.). In that case, Dixon's counsel observed that timely filing a federal discrimination lawsuit – while the mandamus action was underway – was something he *must* do to preserve his client's claims. Dixon's counsel agreed they should simply be stayed until the mandamus process concludes. Supplemental Request for Judicial Notice, Ex. 17, at 10:6-13 ("Plaintiff filed the instant matter on March 21, 2019, as required by the applicable statute of limitations. The statute of limitations on Plaintiff's first, second and third causes of action expired no earlier than April 27, 2019, two years from the date of issuance of the Summary Administrative Review, necessitating the initiation of this federal action. Accordingly, Plaintiff respectfully requests that, should this Court determine that the matter has not yet been judicially exhausted at the state court level, that this action be stayed until a decision has been reached . . . .").

**E.     Dixon's Arguments About Prejudice Are Based On His Application Of The Wrong Legal Standard; USC Has Shown Real And Significant Prejudice.**

Dixon contends that USC has not been prejudiced, because the claims in this action are "at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second." Oppo. p. 25 (citation omitted). Dixon applies the wrong standard. In evaluating prejudice, "the doctrine focuses on the effect of the prior claim in ***warning the defendants in the subsequent claim of the need to gather evidence and prepare a defense***." *Lambert v. Uniregistry, Inc.,* No. 8:18-CV-01566-JLS-JDE, 2019 WL 8129090, at *6 (C.D. Cal. Dec. 2, 2019) (quoting *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d

1131, 1140 (9th Cir. 2001) (emphasis added, alterations omitted)). Here, the limited review afforded by mandamus did not provide USC with reason to interview or gather declarations from witnesses who observed Dr. Allee during the 2015 investigation, or the Appeals Panel who affirmed Dixon's expulsion. While there may be documentary evidence of USC's internal Title IX investigation's findings in the Administrative Record, such evidence is limited in scope to documents reflecting the basis for the university's decision as to whether Dixon violated USC's Student Code of Conduct. It does not address the scope of the investigation, whether there was gender bias or discrimination on the part of anyone in the Title IX office or the University, or whether the university engaged in tortious conduct or breached any sort of contract with Dixon—all of which are critical to this currently pending litigation.

Dixon next argues that USC fails to establish its witnesses' memories have faded, and suggests that even if they have, these witnesses can simply refresh their recollections by reviewing the Administrative Record. First, the testimony of both Jane Roe and Jody Shipper make clear that their memories have faded. *See* Roe Decl. ¶ 4; Shipper Decl. ¶ 5.[6] And contrary to Dixon's assertions, USC has clearly articulated how these faded memories will harm its case—its witnesses have made clear that they are unable to recall details like the communications regarding the investigation process, which are critical to defending against the tortious and discriminatory conduct Dixon alleges USC engaged in. Roe Decl. ¶ 4; Shipper Decl. ¶ 5; Motion p. 23. Further, Dixon's own testimony belies his claim that memories have not faded. In his verified petition filed in the mandamus action, Dixon made multiple references to meeting Roe's roommates and quoted portions of their interviews with Dr. Allee, yet during his deposition, he claimed he was not

---

[6] Dixon's assertion that these declarations "demonstrate that potential witnesses are available and accessible to USC" (Oppo. p. 26) is of no relevance—even if the declarants are accessible, if they do not recall the facts about which they are expected to testify, USC will be prejudiced.

familiar with the names of these individuals. *See* Petition, ¶¶ 17, 18, 19, and 25; *cf.* Dixon Depo. 57:4-17; *see also,* Motion, pp. 12-13. Courts have found prejudice and declined to apply equitable tolling based on similar loss of memories. *See Lambert*, 2019 WL 8129090, at *6, (declining to apply equitable tolling and finding that there was prejudice to Uniregistry where by the time the subsequent proceeding was filed plaintiff could no longer recall many facts to support her claims). Second, as discussed above, the Administrative Record does not provide the necessary facts relating to Dixon's claims of gender bias, discrimination, tortious conduct, or breach of contract, and thus, would not refresh the recollection of USC's witnesses as to this matter.

Ultimately, Dixon's multi-year delay has created "the exact type of stale claims, deteriorated evidence and faded memories that preclude the operation of equitable tolling." *Lambert*, 2019 WL 8129090, at *6.[7]

## V. **CONCLUSION**

For these reasons, USC respectfully requests that the Court grant summary judgment.

---

[7] Dixon cites *Meyers v. Asics Corp.,* 974 F.2d 1304, 1308 (Fed. Cir. 1992) for the proposition that "conclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence" is not sufficient to establish prejudice for purposes of equitable tolling. Oppo. p. 26. Yet *Meyers* addresses a defense of laches—not equitable tolling—and does not even apply California law. And this assertion is at odds with California law, which makes clear that the "primary purpose of statutes of limitation is to prevent the assertion of stale claims by plaintiffs who have failed to file their action until evidence is no longer fresh and witnesses are no longer available." *Addison*, 21 Cal. 3d at 317.

| | | |
|---|---|---|
| 1 | DATED:  December 19, 2022 | PAUL HASTINGS LLP |
| 2 | | CAMERON W. FOX |
| | | JESSICA MENDELSON |
| 3 | | AUSTIN M. SCHULZ |
| 4 | | |
| 5 | | By:  _____ |
| | | CAMERON W. FOX |
| 6 | | |
| 7 | | Attorneys for Defendant |
| | | UNIVERSITY OF SOUTHERN CALIFORNIA |