**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Bryce Dixon,

          Plaintiff,

      v.

University of Southern California et al.,

          Defendants.

Case No. 2:21-cv-05286-VAP-(AFMx)

**Order GRANTING Motion for Summary Judgment (Doc. No. 55)**

Before the Court is a Motion for Summary Judgment ("Motion") filed by Defendant the University of Southern California ("USC").  (Dkt. 55).  Plaintiff Bryce Dixon ("Dixon") opposed the Motion ("Opp'n") on December 12, 2022.  (Doc. No. 59).  USC replied on December 19, 2022.  (Doc. No. 62).

After considering all papers filed in support of, and in opposition to the Motion, as well as the arguments advanced at the hearing, the Court **GRANTS** USC's Motion for Summary Judgment.

## I.    BACKGROUND

In the fall of 2014, Dixon was a freshman football player at USC, attending on a full scholarship.  (Doc. No. 26, First Amended Complaint ("FAC") ¶ 90).  In October 2014, Jane Roe, a senior athletic trainer at USC,

United States District Court
Central District of California

accused Dixon of sexual assault and reported his alleged sexual misconduct to USC's Title IX office.  (*Id.* ¶¶ 91, 165).  After USC concluded its investigation into Roe's sexual misconduct allegations, the university expelled Dixon on May 12, 2015.  (*Id.* ¶¶ 171–97).  Dixon alleges that USC's investigation into the sexual misconduct allegations against him was flawed and led to his wrongful expulsion.  (*Id.* ¶¶ 1, 165–97).

Dixon initiated this action on June 29, 2021.  (Doc No. 1).  USC filed a Motion to Dismiss Dixon's Complaint on August 18, 2021.  (Doc. Nos. 14, 20, 21).  On October 20, 2021, the Court issued its Order granting, in part, USC's Motion to Dismiss, with leave to amend.  (Doc. No. 24).  Dixon amended his Complaint and filed his First Amended Complaint ("FAC") on November 15, 2021.  (Doc. No. 26).

Dixon's FAC asserts claims for (1) Title IX—erroneous outcome, (2) Title IX—selective enforcement, (3) violation of the Unruh Civil Rights Act, (4) breach of contract, (5) promissory estoppel, (6) negligence, and (7) intentional infliction of emotional distress.  (*Id.* ¶¶ 224–344).

On December 6, 2021, USC filed a Motion to Dismiss Dixon's breach of contract and promissory estoppel claims.  (Doc. No. 35.)  The Court granted, in part, USC's Motion to Dismiss and dismissed Dixon's promissory estoppel claim.  (Doc. No. 43).

On December 5, 2022, USC filed its Motion for Summary Judgment, (Doc. No. 55-1, "MSJ"), a Statement of Undisputed Facts, ("USC's SUF,"

2

Doc. No. 55-2), and Request for Judicial Notice, (Doc. No. 56, "USC's RJN").  USC also filed three declarations: Declaration of Jessica Mendelson ("Mendelson Decl."), attaching Exhibits A through I; Declaration of Jane Roe ("Roe Decl."); and Declaration of Jody Shipper ("Shipper Decl.").  (*See* Doc. Nos. 55-3, 55-4, 55-5).

On December 12, 2022, Dixon filed his Opposition to USC's MSJ, (Doc. No. 59, "Opp'n"), a Statement of Undisputed Facts, (Doc. No. 106, "Dixon's SUF"), a Statement of Genuine Issues, (Doc. No. 59-1, "Dixon's SGI"), and Request for Judicial Notice (Doc No. 60, "Dixon's RJN").  Dixon also filed the Declaration of Mark M. Hathaway ("Hathaway Decl."), attaching Exhibits J.  (Doc. No. 59-2).

On December 19, 2022, USC filed its reply to Dixon's opposition (Doc. No. 62, "Reply"), responses to Dixon's SGI (Doc. No. 63), and a Supplemental Request for Judicial Notice (Doc. No. 64, "USC's Supp. RJN").

## II.    LEGAL STANDARD

A motion for summary judgment or partial summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment.  *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.

United States District Court
Central District of California

1998).  "The moving party may produce evidence negating an essential element of the nonmoving party's case, or . . . show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (reconciling *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  The nonmoving party must then "do more than simply show that there is some metaphysical doubt as to the material facts" but must show specific facts which raise a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party.  *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).  "[T]he judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

### III.   JUDICIAL NOTICE

The Court next turns to USC's Request for Judicial Notice ("RJN") in support of its Motion.  USC moves the Court to take judicial notice of the following documents:

| | | |
|---|---|---|
| Exhibit 1: | August 12, 2015 Petition for Writ of Administrative Mandate in *Bryce Dixon v. Kegan Allee, Ph.D., et al.*, Los Angeles Superior Court Case No. BS157112; |
| Exhibit 2: | April 25, 2017 Statement of Decision and Order re Petition for Writ of Mandamus in *Bryce Dixon v. Kegan Allee, Ph.D., et al.*, Los Angeles County Superior Court Case No. BS157112; |
| Exhibit 3: | May 17, 2017 Judgment on Petition For Writ of Administrative Mandate in *Bryce Dixon v. Kegan Allee, Ph.D., et al.*, Los Angeles County Superior Court Case No. BS157112 |
| Exhibit 4: | trial court's docket as of August 17, 2021, in *Bryce Dixon v. Kegan Allee, Ph.D., et al.*, Los Angeles County Superior Court Case No. BS157112; |
| Exhibit 5: | January 4, 2019 opinion in *Doe v. Allee*, 30 Cal. App. 5th 1036 (2019), Court of Appeal, Second District, Division 4, California, Case No. B283406; |
| Exhibit 6: | October 2, 2019 Judgment Granting Petition for Writ of Administrative Mandate in *Bryce Dixon v. Kegan Allee, Ph.D., et al.*, Los Angeles County Superior Court Case No. BS157112; |
| Exhibit 7: | June 15, 2016 Petition for Writ of Administrative Mandate in *John Doe v. Claremont McKenna College*, Los Angeles County Superior Court Case No. BS162759; |

United States District Court
Central District of California

Exhibit 8:    March 21, 2018 Petition for Writ of Mandamus in *John Doe v. Regents of the University of California*, Alameda County Superior Court Case No. HG18897877;

Exhibit 9:    October 7, 2019 Petition for Writ of Mandamus in *Davis Xu, et al. v. Occidental College*, Los Angeles County Superior Court Case No. 19STCP04345.

(Def's RJN at 2–3).

Dixon requests that the Court take judicial notice of the following documents:

Exhibit 10:    Respondents' August 20, 2019 Opposition to Petitioner's Motion for an Order Awarding Attorneys' Fees in *Bryce Dixon v. Kegan Allee, Ph.D., et al.*, Los Angeles County Superior Court Case No. BS157112;

Exhibit 11:    Reporter's Transcript of February 7, 2020 hearing Petitioner's Motion for Attorney Fees in *Bryce Dixon v. Kegan Allee, Ph.D., et al.*, Los Angeles County Superior Court Case No. BS157112;

Exhibit 12:    April 17, 2019 Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiff's Complaint Pursuant To FRCP 12(b)(6) in *Matthew Boermeester v. University of Southern California, et al.*, Case No. 2:19-CV-02137-R (MRWx) (C.D. Cal March 21, 2019), Dkt. 21-1;

Exhibit 13:    July 12, 2019 Order denying Defendant's Motion to Dismiss and staying the case in *Matthew Boermeester v.*

6

*University of Southern California, et al.*, Case No. 2:19-CV-02137 R (MRWx) (C.D. Cal March 21, 2019), Dkt. 38;

Exhibit 14:   February 27, 2019 Complaint for Damages in *Yan Xu, et al. v. Occidental College, et al.*, Los Angeles County Superior Court Case No. 19STLC02141;

Exhibit 15:   June 1, 2020 Notice of Settlement of Entire Case in *Yan Xu, et al. v. Occidental College, et al.*, Los Angeles County Superior Court Case No. 19STLC02141;

Exhibit 16:   October 15, 2019 Notice of Settlement of Entire Case in *John Doe v. Claremont McKenna College*, Los Angeles County Superior Court Case No. BS174089.

(Dixon's RJN at 2).

In USC's Supplemental RJN, USC requested the Court take judicial notice of the following documents:

Exhibit 17:   May 23, 2019 Plaintiff's Memorandum of Points and Authorities in Support of Opposition to Defendant's Motion to Dismiss the Complaint in *Matthew Boermeester v. University of Southern California, et al.*, Case No. 2:19-CV-02137 R (MRWx) (C.D. Cal.).

(USC's Supp. RJN at 2).

Under Federal Rule of Evidence 201, a court may properly take judicial notice of matters in the public record.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  A court may take judicial notice of a public record not for the truth of the facts recited in the document, but for the

existence of the matters therein that cannot reasonably be questioned.  *See* Fed. R. Evid. 201; *see Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").  The court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citation omitted).

The Court takes judicial notice of Exhibits 1–3, 5–16, as these are matters of public record, but does not take judicial notice of the truth of any pleading or declaration filed therein by any party.  Fed. R. Evid. 201(b); *see Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995) ("we may take judicial notice of proceedings in other courts, whether in the federal or state systems."); *see also U.S. Bank, N.A. v. Miller*, No. 12-cv-05632 MMM (MANx), 2013 WL 12114100, at *4 (C.D. Cal. Sept. 30, 2013) ("Court orders and filings are the type of documents that are properly noticed under [Fed. R. Evid. 201].").

The Court takes judicial notice of Exhibit 4 for the limited purpose of recognizing the existence and legal effect of the documents listed on the state court docket, but does not take judicial notice of the truth of any of the statements made in these documents.  *Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047 (9th Cir. 2005) (taking judicial notice of court docket sheet in another matter).

## IV.   FACTS

Dixon and USC each filed statements of undisputed facts, to which the other party filed statements of genuine dispute.  Local Rule 56 allows the Court to find that "the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Issues' and (b) controverted by declaration or other written evidence filed in opposition to the motion."  C.D. Cal. L.R. 56-3.  The Court notes that many facts and contentions are not mentioned in this Order as the Court has found it unnecessary to consider them in reaching its decision.

### A.   Undisputed Facts

The following material facts are supported adequately by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for the purpose of deciding Dixon's Motion.  *See* C.D. Cal. L.R. 56-3.

On November 5, 2014, Jane Roe reported to USC's Title IX Office that Dixon had sexually assaulted her on the evening of October 23, 2014. (USC's SUF No. 2).  On November 7, 2014, USC notified Dixon that he was under investigation for potential violations of USC's Student Code.  (*Id.* No. 5).

As part of USC's investigation, Dr. Kegan Allee interviewed both Roe and Dixon.  (*Id.* No. 6).  Dr. Allee asked Roe and Dixon to identify witnesses

United States District Court
Central District of California

who they believed may have had relevant information.  (*Id.* No. 7).  Roe

identified five potential witnesses: H.M., E.C., B.H., H.D., and S.V.  (*Id.*

No. 8).  Dixon identified one potential witness, his roommate, D.N..  (*Id.*

No. 9).  Dr. Allee interviewed these witnesses[1] and recorded the substance

of the interviews in her notes.  (*Id.* Nos. 8–10; Dixon's SUF No. 3).

        Although Dr. Allee spoke to Roe several times and interviewed her

twice during USC's investigation in 2014–2015, Roe is now unable to recall

many of the details of these conversations.  (USC's SUF No. 32; Roe Decl.,

Doc No. 55-4).  Roe is unable to recall what questions Dr. Allee asked, how

Dr. Allee worded her questions, or what details Dr. Allee may have shared

with her.[2]  (*Id.*).

        On February 11, 2015, USC completed its investigation.  (USC's SUF

No. 11).  Dr. Allee concluded that Dixon had violated USC's Student Code

by engaging in unwanted sexual conduct with Roe.  (*Id.* No. 12).

        On March 2, 2015, Dr. Allee issued her decision recommending that

Dixon be expelled from USC.  (*Id.* No. 13).

_____

[1] Dr. Allee did not interview B.H., who submitted an email stating that Roe had called him after the alleged incident and that he had nothing else to add to the investigation.  (USC's SUF No. 10).

[2] Dixon purports to dispute Roe's statement because Roe's interviews with Dr. Allee are memorialized in notes taken by Dr. Allee.  (Dixon's SGI at 23). That Roe's interviews are memorialized in Dr. Allee's notes, however, does not controvert Roe's assertion that she is unable to recall many details of these interviews.

United States District Court
Central District of California

On April 3, 2015, Dixon appealed Dr. Allee's findings to USC's Student Behavior Appeals Panel.  (*Id.* No. 14).  Dixon alleged that Dr. Allee was "biased" against him, "determined to substantiate the most serious of the allegations," and that she "failed to properly investigate the incident and develop the record" and improperly acted as an "advocate" for Jane Roe. (Dixon's SUF No. 5).  The Appeals Panel affirmed nearly all of Dr. Allee's findings and affirmed her expulsion recommendation.  (USC's SUF No. 15).

On May 2, 2015, Vice Provost Ainsley Carry accepted the Appeals Panel's recommendation and expelled Dixon.  (*Id.* No. 16).

On August 12, 2015, Dixon filed a petition for administrative mandamus ("Petition") in Los Angeles County Superior Court asking that his expulsion be set aside.  (*Id.* No. 17).  Dixon's Petition stated that he was an "aggrieved university student . . .[who] seeks . . . to exhaust judicial remedies . . . before bringing an action in state court for damages and other relief for denial of rights by [USC] and others in violation of the Unruh Civil Rights Act, Civ. Code § 52, for breach of contract, breach of good faith and fair dealing, and other torts[.]"  (Dixon's SUF No. 7).  Dixon further alleged in his Petition that "USC has adopted procedures that lack the most basic elements of fairness and due process, [and] that are overwhelmingly stacked against accused male students . . . ."  (*Id.* No. 9).  Dixon claimed that USC's investigation process reflected "actual bias against accused male students."  (*Id.* No. 11).

United States District Court
Central District of California

The Superior Court considered only the administrative record and a declaration by James Feigert, who testified that Dixon's expulsion was reflected on his transcript.  (USC's SUF No. 18; Dixon's SGI at 7; USC's RJN Ex. Ex. 3 at 2, 33).  The administrative record lodged with the trial court in Dixon's writ of mandate action included the following evidence: Dr. Keegan Allee's notes from her interviews and meetings with witnessess; all evidence gathered by Dr. Allee during her investigation; Dr. Allee's final report with findings and analysis; USC's Student Conduct Code and Policies; and written correspondence exchanged between USC and Dixon and USC and Jane Roe.  (Dixon's SUF No. 1).

On April 25, 2017, the Superior Court denied Dixon's Petition.  (USC's SUF No. 19).

On June 21, 2017, Dixon appealed the trial court's denial of his Petition.  (*Id.* No. 20).  On January 4, 2019, the California Court of Appeal reversed and remanded Dixon's Petition.  (*Id.* No. 21).

On October 2, 2019, the trial court granted Dixon's Petition and set aside his expulsion.  (*Id.* No. 22).

Dixon moved for an award of attorney's fees under California's private attorney general statute.  (Dixon's SUF No. 12).  In opposing Dixon's motion for attorney's fees, USC argued that Dixon was not a true private attorney general because in his Petition, he disclosed his intent to pursue a claim for monetary damages against USC, so he had a significant financial interest in

United States District Court
Central District of California

the outcome of the writ proceeding.  (*Id.* Nos. 13–14).  During a hearing on Dixon's motion, USC stated that Dixon intended to file a lawsuit for damages.  (Dixon's RJN, Ex. 11 at 6).  In February 2020, the trial court granted Dixon's motion and awarded him attorney's fees.  (*Id.* at 10).

On June 29, 2021, Dixon filed the instant action.  (Dixon's SUF No. 23).

Dixon was incarcerated from April 2016 until June 7, 2022.  (*Id.* No. 19).  While incarcerated, Dixon was able to communicate with his attorneys, although the parties disagree as to the extent of this communication.  (*Id.* No. 19; Doc. No. 63 at 71–72).

## V.    DISCUSSION

### A.  Statute of Limitations

USC asserts that Dixon's claims are barred by the statute of limitations, which began to run on May 12, 2015, when USC completed its investigation and expelled Dixon.  (*See* MSJ at 15–16).

"Although California law determines the length of the limitations period, federal law determines when a civil rights claim accrues."  *Lukovsky v. City & County of San Francisco*, 53 F.3d 1044, 1048 (9th Cir. 2008) (citations omitted).  Under federal law, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Id.* at 1048 (internal quotation and citations omitted).  Here, Dixon's claims are based on USC's allegedly flawed investigation of the sexual assault

charges against him.  (FAC ¶¶ 220–66).  Dixon's injury occurred, and he was fully aware of the injury, when USC expelled him on May 12, 2015, after USC's allegedly flawed investigation concluded.  (*Id.* ¶ 195); *see also Samuelson v. Or. State Univ.*, 725 F. App'x 598, 599 (9th Cir. 2018) ("[Plaintiff's] injury occurred, and she was fully aware of the injury and its consequences, when she dropped out of school in 2000.").  Dixon does not dispute that his claims against USC accrued on May 12, 2015.  (*See* Opp'n at 15).

With the exception of his breach of contract claim, each of Dixon's claims is subject to a two-year statute of limitations.  Title IX does not have its own statute of limitations and courts therefore "borrow[] the state statute of limitations for personal injury," which under California law is two years. *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1134 (9th Cir. 2006); *see also* Cal. Civ. Proc. Code § 335.1.  Dixon's Unruh Act claim is also subject to the two-year statute of limitations.  *See Gatto v. Cnty. of Sonoma*, 98 Cal. App. 4th 744, 760 (2002) (acknowledging that all Unruh Act violations do not necessarily have the same limitations period and adopting the personal injury limitation period); Cal. Civ. Code § 335.1 (personal injury actions subject to a two-year limitation period).  Dixon's negligence and IIED claims are likewise subject to a two-year statute of limitations.  *See Flores v. Presbyterian Intercommunity Hosp.*, 63 Cal.4th 75, 79 (2016) (section 335.1 applies to ordinary negligence); *Pugliese v. Super. Ct.*, 146 Cal.App.4th 1444, 1450 (2007) (applying section 335.1 to intentional infliction of emotional distress).  As to these claims, Dixon had two years, or until May

United States District Court
Central District of California

12, 2017, to file this action in federal court.  *See Stanley*, 433 F.3d at 1132;
Cal. Civ. Proc. Code § 335.1.

The parties do not dispute that Dixon's breach of contract claim is
subject to a four-year statute of limitations.  (*see* Opp'n at 15; *see also* MSJ
at 16 (citing *Salazar v. Regents of the Univ. of Cal.*, No. 16-cv-05235-EDL,
2017 WL 4586831, at *7–8 (N.D. Cal. Apr. 27, 2017)).  Therefore, the
longest statutory period applicable to Dixon's claims expired in May 2019.
Dixon filed this action on June 29, 2021—at least two years after the statute
of limitations expired on his breach of contract claim.  (*See* Doc. No. 1).
Thus, absent an exception, Dixon's claims are time-barred.

### B.  Equitable Tolling

When a claim may be time-barred under the statute of limitations, the
doctrine of equitable tolling "suspend[s] or extend[s] a statute of limitations
as necessary to ensure fundamental practicality and fairness."  *Brome v.
Cal. Highway Patrol*, 44 Cal. App. 5th 786, 794 (2020) (internal quotations
and citations omitted).  The doctrine applies "occasionally and in special
situations" to "soften the harsh impact of technical rules which might
otherwise prevent a good faith litigant from having a day in court."  *Addison
v. State*, 21 Cal. 3d 313, 316 (1978).  Equitable tolling applies to "reliev[e] [a]
plaintiff from the bar of a limitations statute when, possessing several legal
remedies he, reasonably and in good faith, pursues one."  *Brome*, 44 Cal.
App. 5th at 794; *see also Hansen v. Board of Registered Nursing*, 208 Cal.
App. 4th 664, 672 (2012) (equitable tolling available when "a party with
multiple available remedies pursues one in a timely manner.").

District courts apply the forum state's law for equitable tolling determinations.  *See Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004).  In California, equitable tolling is available if a plaintiff shows: (1) he gave timely notice of his claims to defendant, (2) the resultant delay did not cause prejudice to defendant, and (3) plaintiff acted reasonably and in good faith. *See Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*, 9 Cal. 5th 710, 717 (2020).

### 1.   Administrative Exhaustion

In California, equitable tolling is automatic "[w]here exhaustion of an administrative remedy is mandatory prior to filing suit . . . ."  *McDonald v. Antelope Valley Community College District*, 45 Cal.4th 88, 101 (2008) (quoting *Elkins v. Derby*, 12 Cal.3d 410, 414 (1974)).  "Exhaustion of *administrative* remedies is 'a jurisdictional prerequisite to resort to the courts.'"  *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 70 (2000) (quoting *Abelleira v. District Court of Appeal*, 17 Cal. 2d 280, 293 (1941) (emphasis in original)).

Judicial exhaustion, on the other hand, is "a form of res judicata, of giving collateral estoppel effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive *judicial* remedy for reviewing administrative action."  *Briggs v. City of Rolling Hills Estates*, 40 Cal. App. 4th 637, 646 (1995) (emphasis in original).  Accordingly, the doctrine of judicial exhaustion "precludes an action that challenges the result of a quasi-judicial

proceeding unless the plaintiff first challenges the decision though a petition for writ of mandamus." *Gupta v. Stanford Univ.*, 124 Cal. App. 4th 407, 411 (2004) (citing *Johnson*, 24 Cal. 4th at 70); *see also Pomona College v. Superior Court*, 45 Cal.App.4th 1716, 1722–1723 (1996) (explaining that section 1094.5 also applies to private universities).

Unlike administrative exhaustion, "issues of judicial (or administrative) exhaustion and equitable tolling are distinct." *McDonald*, 45 Cal. 4th at 113 (citing *Page v. Los Angeles County Probation Dept.*, 123 Cal. App. 4th 1135, 1143 (2004)). "[A] complainant may exhaust available judicial review procedures only to find a subsequent complaint time-barred. One inquiry has little bearing on the other." *Id.*

Here, Dixon argues that his claims against USC were equitably tolled until he exhausted his administrative and judicial remedies on October 2, 2019, when the trial court granted his Petition. (Opp'n at 16). As explained above, judicial exhaustion does not automatically toll the limitations period. *See McDonald*, 45 Cal. 4th at 113. Accordingly, Dixon must establish all three elements of equitable tolling.

2.   Notice

"The first element of equitable tolling—that a plaintiff must provide timely notice of its claims to the defendant— . . . ought to be interpreted literally: When confronted with equitable tolling claims, courts must examine each case on its facts to determine whether the defendant received timely notice of the plaintiff's intent to file suit." *Saint Francis Mem'l Hosp.*, 9 Cal.

5th at 727.  To satisfy timely notice, "filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim."  *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 102 n.2 (2008).

Here, Dixon's state court Petition stated the following:

> Petitioner, an aggrieved university student, seeks by this Petition to exhaust judicial remedies through this petition for writ of mandate following the private university's appeal process, which is now final, before bringing an action in state court for damages and other relief for denial of rights by Respondents and others in violation of the Unruh Civil Rights Act, Civ. Code § 52, for breach of contract, breach of good faith and fair dealing, and other torts[.]

(Dixon's SUF No. 7).

As an initial matter, the Court notes that Dixon did not separately name USC as a respondent in his Petition.  (*See* Ex. 1).  Dixon directed his petition to respondents Kegan Allee, Ph.D., in her official capacity as Title IX Investigator for USC; and Ainsley Carry, Ed.D., in his official capacity as Vice Provost for Student Affairs for USC.  (*Id.*).  "Although generally the notice factor 'means that the defendant in the first claim is the same one being sued in the second,' this is not an absolute requirement."  *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 n.3 (9th Cir. 1993) (quoting *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 924 (1983)).  As is the case here, the notice requirement may be satisfied "where a defendant in the second

18

claim was alerted to the need to gather and preserve evidence by the first claim even if not nominally a party to that initial proceeding." *Id.* (citing *Collier*, 142 Cal. App. 3d at 928–29).

USC contends that Dixon's Petition did not provide USC with notice of his present claims. (MSJ at 20). Moreover, USC argues that, because mandamus review is based on a closed record, USC had no opportunity to prepare a defense for future civil litigation. (*Id.*).

USC's claim that Dixon never informed USC that he intended to sue is belied by the record. Dixon's petition explicitly stated that he intended to bring a civil action and identified his potential claims. (Dixon's SUF No. 7). Dixon's Petition asserted the same facts as those presented in his FAC, thus alerting USC of the need to investigate those facts. (*See* Doc. No. 24). Accordingly, Dixon has satisfied the first element of equitable tolling.

3.   Prejudice

To satisfy the second requirement, "the facts of the two claims [should] be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second." *Collier*, 142 Cal. App. 3d at 925; *see also Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1141 (9th Cir. 2001) (noting "the equitable tolling doctrine requires that the same wrong serve as the predicate for the earlier and later proceedings to make sure defendant received proper notice. In this way, defendant is protected from stale claims."). The two claims, however, "need not be absolutely identical." *Collier*, 142 Cal. App.

3d at 925.  "The test for equitable tolling contains no requirement that the legal claims themselves be identical but instead focuses on whether the facts are similar enough that an investigation of one claim will allow collection and preservation of evidence concerning the other."  *Brome*, 44 Cal. App. 5th at 796–97 (citing *McDonald*, 45 Cal. 4th at 102 n.2).

"Fairness to the defendant requires that a case be brought when memories have not been affected by time, when all pertinent witnesses can still be called, and when physical evidence has not been destroyed or dispersed."  *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004).  The question therefore is "whether the application of equitable tolling would prevent [USC] from defending a claim on the merits."  *Saint Francis Mem'l Hosp.*, 9 Cal. 5th at 728.

Here, review of Dixon's Petition was based on a closed record, so USC argues that there was not the opportunity to develop facts, gather evidence, and prepare a defense against Dixon's instant allegations.  (MSJ at 20).  USC further claims that "faded memories already doom this case" because witnesses who had first-hand knowledge of the investigation no longer remember details of the process.  (*Id.* at 12–14).

As explained above, Dixon's prior proceedings in state court were based on the same facts and types of evidence as this action.  USC continues to employ the Title IX investigator who handled Dixon's case.  (MSJ at 22).  The administrative record lodged with the state court in Dixon's Writ of Mandate action contained Dr. Allee's notes from her

United States District Court
Central District of California

interviews and meetings with witnesses, in addition to other evidence. (Dixon's SUF No. 1). USC has not established that tolling the limitations period would, without any dispute of fact, undermine USC's ability to defend against Dixon's instant claims. Accordingly, Dixon has satisfied the second element, lack of prejudice to USC.

### 4. Good Faith and Reasonable Conduct

The third element of equitable tolling requires "reasonable and good faith conduct" by Dixon. *Saint Francis Mem'l Hosp.*, 9 Cal. 5th at 728. "A party seeking equitable tolling . . . must demonstrate that its late filing was objectively reasonable under the circumstances." *Id.* When analyzing a party's reasonableness, courts focus "not on a party's intentions or the motives behind a party's actions, but instead on whether that party's actions were fair, proper, and sensible in light of the circumstances." *Id.* at 729. Thus, for equitable tolling to apply, Dixon's late filing must have been objectively reasonable under the circumstances.[3] *See id.*

Here, USC contends that Dixon cannot satisfy equitable tolling's third element because the length of his delay suggests unreasonable conduct. (MSJ at 23). USC does not claim that Dixon acted in bad faith. Dixon responds that due to the doctrine of exhaustion of judicial remedies, he and his counsel reasonably and in good faith believed that he had no alternative

---

[3] In analyzing whether Dixon acted reasonably, we also consider that he was represented by counsel throughout the proceedings. *See, e.g., Collier*, 124 Cal. App. 3d at 931 (explaining that the requirement that plaintiff acted reasonably and in good faith "likewise requires that [plaintiff's] lawyers have acted reasonably and in good faith since they made most of the decisions about whether and what to file.").

United States District Court
Central District of California

but to wait until the entry of judgment in the Writ of Mandate action before he could pursue the current action.  (Opp'n at 27).

Even if Dixon needed to wait until the final adjudication of his Petition, he failed to explain why he waited nearly two years to file his Complaint. The state trial court entered its final judgment on October 2, 2019.  (USC's SUF No. 33).  Dixon did not file his Complaint until 20 months and 19 days later on June 29, 2021.  (*Id.* No. 23; Doc. No. 1).

As discussed in the Court's Order Denying USC's Motion to Dismiss (Doc. No. 24), Dixon could have exhausted his judicial remedies by originally filing his Petition, and the claims in this action, in federal court because his claims had already accrued.  *See e.g., Doe v. Cal. Inst. of Tech.*, No. 18-09178, 2019 WL 4238888, at *3 (C.D. Cal. Apr. 30, 2019) ("Plaintiff has exhausted his judicial remedies by asserting a cause of action under § 1094.5 in the FAC, and this Court maintains jurisdiction over Plaintiff's federal claims"); *Doe v. Cal. Inst. of Tech.*, No. 19-01005, 2019 WL 8645652, at *7 (C.D. Cal. Aug. 13, 2019) (finding it was proper for a federal court to exercise supplemental jurisdiction over a § 1094.5 petition when plaintiff asserted a Title IX claim).

Likewise, Dixon's reliance on *Boermeester v. Univ. of S. Cal., et al.,* No. 19-02137 (C.D. Cal.) is misplaced.  In *Boermeester*, plaintiff filed his complaint in federal court while his petition for a writ of administrative mandamus was *pending* in state court.  *See id.*  Dixon need not have waited

until final adjudication of his Petition to bring this action because his claims accrued at the time of his expulsion in May 2015.

Although Dixon bears the burden of showing that equitable tolling applies, he has not identified, nor is the Court aware of, any authority finding a 20-month delay to be reasonable.  *See In re Marriage of Zimmerman*, 183 Cal. App. 4th 900, 912 (2010) (explaining that the party asserting equitable tolling has the burden to show that the doctrine applies).  Further, Dixon's reliance on *Brome* to argue that his 20-month delay was reasonable is misplaced.  (Opp'n at 27 (citing *Brome*, 44 Cal. App. 5th at 794)).  The *Brome* court found that there was a triable issue of fact whether the plaintiff was able to meet the good faith requirement despite an 11-month delay. 44 Cal. App. 5th at 798.  Dixon's delay was nearly twice that in *Brome*.

Courts have generally applied equitable tolling when delays in filing the second action were "substantially less than ten months[.]"  *See Darnaa, LLC v. Google, Inc.*, 2016 WL 6540452, at *5 (N.D. Cal. Nov. 2, 2016) (collecting cases).  Moreover, courts have found that delays of less than 20 months demonstrated unreasonable conduct.  *See Audio Mktg. Servs., S.A.S. v. Monster Cable Prod., Inc.*, 2013 WL 633202, at *7–8 (N.D. Cal. Feb. 20, 2013) (finding no "good faith and reasonable conduct" justifying equitable tolling for 16-month delay); *Easley v. County of El Dorado Prob. Dep't.*, 478 Fed. App'x 447, 447 (9th Cir. 2012) (finding no equitable tolling for a delay of over one year (citing *Ervin v. Cnty. of Los Angeles*, 848 F.2d 1018, 1019–20 (9th Cir. 1988))); *Peterson-Houston v. Finet/RPM Mortg.*

*Corp.*, 1997 WL 446230 (N.D. Cal. July 23, 1997) (finding equitable tolling inappropriate after a delay of one year).

Assuming that equitable tolling applied, the total passage of time under the statute of limitations, except for the time tolled, is 1 year, 11 months, and 28 days.  Even after crediting the tolled period, Plaintiff waited to file this action until the statute of limitations had nearly run on most of his claims.  In *Collier*, the court noted that "[p]erhaps, if a plaintiff delayed filing the second claim until the statute on that claim had nearly run, even after crediting the tolled period, his conduct might be considered unreasonable," but ultimately found that it "need not decide" such a question.  142 Cal. App. 3d at 926, 931–32; *see also Garber v. City of Clovis*, 698 F. Supp. 2d 1204, 1214 (E.D. Cal. 2010) (observing that, although the third element of good faith and reasonable conduct on the part of the plaintiff is "less clearly defined," "the plaintiff must file his second claim a short time after tolling has ended") (internal citation omitted); *Abdullah v. City of San Diego*, 2021 WL 2588855, at *2 (S.D. Cal. June 23, 2021) (finding an 18-month delay in filing a complaint after the limitations period had expired was not objectively reasonable) (footnote omitted).

In light of these circumstances, it was objectively unreasonable for Plaintiff to have filed the present action over 20 months after the state trial court entered judgment.  Additionally, Plaintiff alleges no facts justifying this 20-month delay, despite having the opportunity to offer such evidence to support his contention that the limitations period was tolled.  *See Vaughn v.*

*Teledyne, Inc.*, 628 F.2d 1214, 1218 (9th Cir. 1980) (plaintiff bears the burden of proving facts that show tolling).

Accordingly, equitable tolling does not apply and Dixon's claims are time-barred.

## VI.    CONCLUSION

The Court therefore **GRANTS** USC's Motion for Summary Judgment as to all claims.

**IT IS SO ORDERED.**

Dated:    1/18/23

_____
Virginia A. Phillips
Senior United States District Judge